## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEAN E. MILLER as representative shareholder, brings this action on behalf of the nominal defendant INTELLICELL BIOSCIENCES, INC., as and for derivative claims, | Case **No: 14-CV 1819 (PKC)** |
| Plaintiff, | **JURY DEMANDED** |
| -against- | FIRST AMENDED **VERIFIED COMPLAINT DERIVATIVE ACTION** |
| STEVEN VICTOR, MD, in his capacity as Chairmen -CEO, and individually, ANNA RHODES as former Executive Vice President and individually, LEONARD L. MAZUR as interim Chief Operating Officer and individually, MYRON HOLUBIAK as a Director and individually, MICHAEL HERSHMAN, as Chairman of the Board of Directors and individually, STUART GOLDFARB as a former Director and individually, VICTOR DERMATOLOGY & REJUVENATION, P.C., VICTOR COSMECEUTICALS, INC., LASERSCULPT, INC., and the DOE ENTITIES 1-5, | |
| Defendants, | |
| and, | |
| INTELLICELL BIOSCIENCES, INC., | |
| Nominal-Defendant. | |

Plaintiff, DEAN E. MILLER as representative shareholder, brings this action on behalf of the nominal defendant **INTELLICELL BIOSCIENCES, INC.,** by his attorneys, The Law Offices of Douglas R. Dollinger, Esq., P.C., & Associates, as and for this Complaint, upon his personal knowledge and upon information and belief, as to all other matters asserted herein, alleging as follows:

I
## Nature of The Action

**1.** This is a shareholder's derivative action brought by Plaintiff DEAN E. MILLER ("MILLER" or "Plaintiff-Representative" ) as and for the benefit of the nominal defendant INTELLICELL BIOSCIENCES INC., **("INTELLICELL" or "Company").**

**2.** Plaintiff-Representative MILLER is proceeding in the right of **INTELLICELL** shareholders as the class of shareholders represented by way of the derivative claims against the **Company** and **its** Board, as against the individual Defendants, and as against the Enterprise Entities of **VICTOR RHODES, VICTOR DERMATOLOGY & REJUVENATION, P.C., VICTOR COSMECEUTICALS,** INC., **LASERSCULPT,** INC., and the **DOE ENTITIES** 1-5.

**3.** **INTELLICELL** is a publicly traded OTC and a Nevada Corporation trading under the ticker symbol "SVFC".

**4.** **INTELLICELL'S** primary business is focused on the expanding regenerative medical markets and licensing-using its patented adipose stromal vascular fraction stem cell rejuvenation (from time-to-time "SVFSCR Process" or "Process") filed with United States Patent and Trade Office ("USPTO") as assigned to the **Company** by the Defendant **STEVEN VICTOR, MD ("VICTOR")** wherein, although claimed to be a

non-drug exempt from US Food and Drug Administration ("FDA") approval, said processes have not received FDA approval nor has **INTELLICELL** complied with or taken corrective action or the appropriate response to the written and verbal warnings-findings issued by the FDA for corrective action in connection with the process and public statements concerning the Process as constituting a class of drug, wherein by reason of the affirmative action of **VICTOR, ANNA RHODES ("RHODES")** and the Board, as well as the failure of the **VICTOR, RHODES** and the Board to act, the **Company** is subject to Administrative action by the FDA and USPTO involving multiple claims or wrongdoing both domestically and abroad.

5. The claims are asserted for the period commencing at least by November 1, 2010, by operation of assignment of the right to the SVFSCR Process and continuing to the present (the "Relevant Period").

6. The claims are asserted against each of the defendants as officers/directors of the **Company** and individually as and for either their employment-association with the **Company** at various times during the Relevant Period for their knowledge/participation in and of the claims of wrongdoing or for their failure to take action to cure the wrongdoing once they became aware of the claims against **VICTOR** in his capacity as Chairman-CEO and individually, as

well the claims against **RHODES** as former Executive Vice President, and individually.

      **7.**     That by reason of their affirmative acts and/or omissions, **LEONARD L. MAZUR ("MAZUR")** as interim Chief Operating Officer and individually, **MICHAEL HERSHMAN, ("HERSHMAN ")** Chairman of the Board of Director and individually, **MYRON HOLUBIAK ("HOLUBIAK")** as a former Director and individually, **STUART GOLDFARB ("GOLDFARB")** as a former Director and individually, have each acted recklessly, negligently or were grossly negligent as members-organizers or aiders and abettors of Enterprise Entities of **VICTOR and RHODES** including their allowing the use of **VICTOR DERMATOLOGY** & **REJUVENATION, P.C., VICTOR COSMECEUTICALS, INC., LASERSCULPT, INC.,** and the **DOE** Entities 1-5, each as controlled by **VICTOR and RHODES** to hinder or otherwise commit fraud as against **INTELLICELL.**

      **8.**     That by reason of the Board's affirmative acts and the failure of the Board to take corrective action as noticed during the relevant Period, **VICTOR** and **RHODES** and other Board members have operated **INTELLICELL** for their own personal benefit causing injury to the business and property of **INTELLICELL,** wherein most have received undisclosed salaries and bonuses or other benefits by reason of the fraud occurring during the Relevant Period and

concerning capital raises coupled with the breach of their fiduciary duties and the effects of self-dealing.

**9.** In part, and more specifically, the allegations include claims that during the Relevant Period, the Board and individual defendants engaged in waste and conversion of investors' funds and payments made by licensees for the **Company's** SVFSCR Processes; allowed and assisted in the fraud used to induce and related to the sale of licenses, convertible debentures and the sale of securities by subscription and in the public markets; allowed and assisted in fraud-misrepresentations in connection with subscription agreements involving the sale/purchase of securities for **INTELLICELL's** Treasury; allowed improper accounting and bookkeeping transactions to accrue; allowed and intentionally changed or altered accounting and bookkeeping entries so as to conceal the illegal acts involving **VICTOR, RHODES** the Enterprise Entities and the **Company's** use of investors'-licensees' funds; allowed employees' wages to remain unpaid; falsely reported employees' wages paid to the Internal Revenue Service; failed to make payment and underpayment of fiduciary taxes owed to the United States and New York State Tax Treasuries on behalf of employees; falsely underreporting wages to the New York State Department of Labor; allowed mismanagement of the **Company's** laboratory facilities by **VICTOR;** allowed payment of undisclosed salaries, [double dipping] to **VICTOR and RHODES;** allowed unsecured self-dealing loans to **VICTOR-RHODES** for

their wholly owned Enterprise Entities for construction and leasehold improvements where at times the sums were in excess of $3,000,000.00 without benefit or the assignment of the leasehold improvements back to the **Company;** allowed the filing of patents containing knowingly false and misleading application information with the USPTO and FDA with submission of falsified records concerning laboratory and patient test results to the USPTO and FDA and other regulating authorities; allowed the sale of the **INTELLICELL** SVFSCR Process knowingly and falsely claiming it was a non-drug being used with FDA approval as to the viability of the SVFSCR Process; allowed the abuse of process and false claims resulting in the false arrest of an employee so as to prevent whistle blowing by said employees, allowed false and misleading statements to be filed with the Securities  and Exchange Commission and otherwise failed to report events as required.

**10.**    In each instance during the Relevant Period, the conduct of **VICTOR, RHODES** and the Board was in some cases intentional and others negligent or otherwise grossly negligent resulting in and exposing **INTELLICELL** to multiple claims for fraud related to **INTELLICELL** SVFSCR Processes and the business management of the **Company.**

## II.
### Jurisdiction and Venue

**11.**    This Court also has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. § 1332(a) (2), because complete diversity exists between Plaintiff-Representative and each defendant; the amount in controversy exceeds $75,000.00.

**12.**    In the alternative their a exists federal questions of law as related to and in connection with the interstate purchase and sale of securities in violation of Section l0 (b) and Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §78j (b) (the "Exchange Act"), and SEC Rule 1Ob-5, 17 C.P.R. § 240.l0b-5, promulgated there under, as well as 18 USC §§1341 and 1344 et seq.

**13.**    Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 139l(b) insofar as the defendant corporation **INTELLICELL** is headquartered in this district at 460 Park Avenue, 17th Floor New York, New York, each of the individual defendants are doing business in the state of New York, and all or a substantial part of the events or omissions giving rise to the claims of misconduct contained herein, including the electronic publication and dissemination of false and misleading financial documents upon which plaintiff and others relied in the purchase of their securities occurred substantially in this district.

## III.
## Supplemental Jurisdiction

**14.**     To the extent that any of the Plaintiff-Representatives claims lack an independent basis for original federal jurisdiction, this Court has supplemental jurisdiction over those claims under 28 U.S.C. § 1367 because they are so related to the claims within this Court's original jurisdiction, that they form a part of the same case or the controversy under Article III of the United States Constitution.

## IV.
## Parties/Standing

**Plaintiffs:**

**15.**     At all relevant times herein, Plaintiff-Representative DEAN E. MILLER was and is, or otherwise was and is by operation of law, the lawful owner and holder of issued shares of **INTELLICELL's** common stock and has standing to maintain this action as representative shareholder having obtained his shares at all times relevant to the claims herein and is a resident and domiciled in the State of Michigan.

**Defendants:**

**16.** Upon information and belief, defendant **STEVEN VICTOR, MD,** is domiciled and residing in the State of New York, and a doctor of medicine duly licensed to practice medicine or otherwise conduct medical research in the State of New York.

**17.** At all times relevant herein, defendant **VICTOR** is or was the Chairman of the Board of Directors and Chief Executive Officer ("CEO") of the **INTELLICELL.**

**18.** Upon information and belief, defendant ANNA **RHODES** is domiciled and residing in the State of New York.

**19.** At all times relevant herein, defendant **RHODES** was the Executive Vice President of Operations of **INTELLICELL** and the wife of **VICTOR.**

**20.** Upon information and belief, defendant **LEONARD L. MAZUR** was and is the interim Chief Operating Officer of **INTELLICELL** conducting business in New York.

**21.** Upon information and belief, defendant, **MICHAEL HERSHMAN** was and is a Director **of INTELLICELL** conducting business in New York.

**22.** Upon information and belief, defendant **MYRON HOLUBIAK** was and is a Director **of INTELLICELL** conducting business in New York.

**23.** Upon information and belief, defendant **STUART GOLDFARB** was a Director **of INTELLICELL** conducting business in New York.

**24.** At all times relevant herein, defendant, **VICTOR DERMATOLOGY** & **REJUVENATION, P.C.,** (**"VICTOR DERMATOLOGY")** was/is a closely held and private New York Corporation maintaining its principle place of business in the State of New York, having its executive offices located at 460 Park Avenue, 17th New York, New York and is an association-in-fact Enterprise-Entity.

**25.** At all times relevant herein, defendant, **VICTOR COSMECEUTICALS INC., ("VICTOR COSMECEUTICALS ")** is a closely held and private New York Corporation maintaining its principle place of business in the State of New York, having its executive offices located at 460 Park Avenue, 17th Floor New York, New York, and is an association-in- Fact Enterprise-Entity.

**26.** At all times relevant herein, defendant, **LASERSCULPT** INC., **("LASER")** is a closely held and private Delaware Corporation maintaining it principle place of business in the State of New York, having its executive offices located at 460 Park Avenue, 17th Floor New York, New York, and is an association-in-fact Enterprise-Entity.

**27**. At all times relevant herein, upon information and belief, defendants, the **DOE CORPORATE** Entities 1-5, are closely held and private domestic and foreign Corporations or other business entities associated-in-fact

maintaining their principle place of business in the State of New York, having their executive offices located at 460 Park Avenue, 17th Floor New York, New York, and is a cluster of various association-in-fact Enterprise-Entities.

28.    At all times relevant herein, defendants, the **DOE CORPORATE** Entities 1-5, the true names of said entities being unknown to Plaintiffs at this time are business corporations or other business organizations which exist or existed at one time, upon information and belief, duly incorporated or otherwise acting as de facto corporations-entities, organized to further the illegal activities of the Defendants **VICTOR and RHODES** Enterprise.

29.    Plaintiffs do not currently know the true names of defendant Entities **DOE(s)** 1 through 5. However, Plaintiffs will seek leave of the court to amend this Complaint by alleging the true names and capacities of defendant, **DOE(s)** Entities 1 through 5 when they are ascertained.

30.    Upon information and belief, Defendants **VICTOR and RHODES** are majority shareholders of **VICTOR DERMATOLOGY.**

31.    Upon information and belief, Defendants **VICTOR and RHODES** are majority shareholders of **VICTOR COSMECEUTICALS.**

32.    Upon information and belief, Defendants **VICTOR and RHODES** are majority shareholders of **LASER.**

**33.**     Upon information and belief, Defendants **VICTOR and RHODES** are majority shareholders of the **DOE** Entities 1-5.

**34.**     That     Defendants     **VICTOR,     RHODES,     VICTOR DERMATOLOGY**     &     **REJUVENATION,     P.C.,     VICTOR COSMECEUTICALS, LASER, and DOE ENTITIES** 1-5 are hereinafter either referred to individually as referenced above or from time-to-time collectively as the **"VICTOR and RHODES** Enterprise" or the "Enterprise Entities", "Companies" or the **"DOE ENTITIES".**

**Nominal Defendant:**

**35.**     At   all   times   relevant   herein,   defendant,   **INTELLICELL BIOSCIENCE Inc.,** was and is a Nevada Corporation engaged in medical research corporation maintaining its principle place of business in the State of New York,  having its executive offices located at 460 Park Avenue,  1t[11] Floor New York, New York.

V.
**Demand For Action By The Board of Directors As And A Futility**

**36.**     At all times hereinafter mentioned, unless otherwise alleged, Plaintiff-Representative was and  is a shareholder of the **Company** and by virtue of his ownership interest he is acting as representative for the **Company** and brings this lawsuit as a derivative action on behalf of the

**Company** pursuant to Rule 23.1 of the Federal Rules of Civil Procedure and New York State law.

**37**. The action is not a collusive one to confer jurisdiction that the court would otherwise lack for the reason that the claims set forth hereafter involve matters for which this court has subject matter jurisdiction, personal jurisdiction and for the reason that the acts complained of occurred within district of this Court.

**38.** On multiple occasions by various individual debenture or shareholders, notices by licensees, notices from employees to cure defaults and acts of other wrongdoing were sent to the **Company's** Board of Directors; including on July 19, 2012, January 2013, February 14, 2014 and again on March 3, 2014, where caused of notice was sent notice to the Board advising them to take steps to remedy the claims of fraud in filings with the Securities and Exchange Commission ("SEC") for Rule violations heretofore set forth in this Complaint.

**39.** Plaintiff-Representative by and through his counsel has demanded and requested the **Company,** or its present board of directors, to take action against those responsible for the violations and to enforce the terms and conditions of the **Company's** bylaws and to meet its contractual obligation and fiduciary obligations pursuant to the powers and authority granted to the

**Company's** officers so as to eliminate the illegal conduct complained of

herein.

    **40.**    In each instance in cumulative the notices provided:

Notice to the Board of Intellicell of ("Intellicell" or the "Company") related to the claims of wrongful activities engaged in by management in its operations of the Company, including the phantasm of excuses created for the aid of and on behalf of Dr. Victor, it appears little has changed and I am, in addition to pursuing the claims of investors-licensees, now engaged to pursue the claims of salaried employees who were essentially forced into servitude by reason of the deception used to obtain their services.

Using the licensees funds allowing Dr. Victor and his wife to support a lifestyle at the edge of excess as well as exploiting the services of Intellicell employees luring them in the service of Company fully knowing the Company was either underfunded or without funds to pay them is reprehensible; especially in light of the discrepancies associated with the underpayments made to them and the reported withholdings to federal and state taxing authorizes; not to mention the lifestyle of Intellicell's other officers.

On these points the undersigned has been formally retained to represent the wage and benefit claims of Mr. Robert Sexauer, Mr. Jonathan Schwartz, Ms. Sarah Young and Ms. Natasha Labbon. Likewise, I now represent the Companies controlled by Patrica Dixon, William Hess, Jason Kane and Bruce Hanson as well as the Huberfeld Group as presented to you in the draft complaint provided to the Board.

Each of these former licensee and employees has come to this office with similar claims of wrongdoing. Their claims as presented involve serious allegations of misconduct including fraud, misrepresentation, and violation of fiduciary duties as per the Company's reporting requirements to taxing authorities and other regulatory agencies-bodies.

What appears to be most alarming against the backdrop of these claims is a pattern of criminal activity which has repeated itself time and time again.

The theme of wrongdoing includes the false reporting or the failure to timely/properly/ fully report matter in the Company's SEC filings; false under-reporting of wages and withholdings to the New York State Department of Labor; false filings under-reporting payment of withholding with the United States Social Security Administration; false filings and under reporting of and withheld payment to the United State Internal Revenue Service; false filing with the United State Patent and Trade Office; false reporting of the theft of Corporate property with the false and malicious arrest of Sarah Young,  fraud in the inducement involving licensees with the improper use of the licensee payments; and false filings with the Food and Drug Administration.  The list goes on and on.

In each instance of employee payroll and withholding, taxes were under-reported but the wages withheld for the gross amount of each employee's paycheck, but was not paid.  This matter needs to be voluntarily corrected at once.

Turning to the outstanding wages and other benefits wrongfully withheld.  Under New York Labor Law Article 6 § 191 (3), employees must be given their final pay on the next regularly-scheduled payday.  Likewise, Commissions-scheduled bonuses must be paid within 5 business days of when they become due.  Each of these employees made a proper demand and the time for payment has long ago expired and has been ignored.

Final demand is hereby made of you on behalf of and in the sum of:

| | | |
|---|---|---|
| 1) | Robert Sexauer: past wages owed: | $298,957.00 |
| 2) | Jonathan Schwartz: breach of settlement agreement | $165,000.00 |
| 3) | Sarah R. Youngpast wages-additional damages | $150,000.00 |
| 4) | Natasha Labban: | $ 10,000.00. |
| | Total Wages-Damages Claimed: | $623,957.00 |

There are additional claims and matters which need to be discussed concerning the federal and state taxing authorities, however, I believe we can come to an agreement on these matters once you have reconciled the books and payments as related to the individual employees.

The following damages are related to fraud claims by licensees:

| | | |
|---|---|---|
| 1) | Jason Kane- Regenastem, Inc: | $650,000.00 |
| 2) | Cell Innovations Pty Ltd: | $750,000.00 |
| 3) | William Hess-AllWin Scientific Corporation: | $150,000.00 |
| 4) | Patricia Dixon- POBH Holdings LLC: | $150,000.00 |
| | Total Damages Claimed: | $1,700,000.00 |

The accounts and associated disbursement of these funds were falsely reported and the GAAP requirement for their posting as required were false and misleading.

My investigation supports not only these employees claims, but the claims of my other clients as licensees/investors and creditors of the Company. At your request I discussed the matter of settlement with each of them. Each of the licensees are willing to work with the Company; as to the Huberfeld Group it appears that if a global reset were negotiated the matter would be resolved.

The Board indicated that Dr. Victor would be stepping down for his position as CEO of the Company.  He would be returning to the laboratory and would no longer have access to corporate funds.  These two points are fundamental to any settlement and I trust you can fashion some public statement to take effect at a stated and precise time in the future.

I was also advised that there was a potential for bankruptcy as a possible way out for the Intellicell, however, this strategy is the least viable and would not affect my clients ability to recover their funds.   The claims would be presented in adversarial proceedings and as for the reason of their character of the claims involves fraud, they would not be dischargeable against either Intellicell or Dr. Victor.   Additionally, the Company has a two million dollar Errors and Omission Policy which would be accessible to my clients based on the negligence of the board.

**41.**    Said efforts  have been futile for the reasons that:

(i) The members of the present board of directors of the **Company** participated in, approved, or were the beneficiaries of, the wrongful acts and conduct herein alleged and are themselves named as defendants herein;

(ii)    The entire-present board of directors of the **Company** has, for a considerable time, been fully aware of the wrongful acts and conduct herein alleged and has nevertheless failed to take action thereon; but on the contrary, they have actively conspired to and have concealed and suppressed any information from the plaintiff and the public of the wrongs complained of, and;

(iii)    The individuals    defendants    herein    who    were    the beneficiaries of the wrongful acts and conduct herein alleged have    dominated and controlled the **Company** and have exercised and exerted such domination and control for such time as has been necessary so as to accomplish their plan. Any action that might have been instituted by the **Company** against the individual defendants to redress the wrongs herein complained of, would, therefore, have been    in friendly hands and could not have been diligently    and    properly prosecuted by reason of the    aforesaid domination, control,    and influence exercised and exerted by said individual defendants; and;

(iv)    Thus, further demand upon the **Company** to bring action to redress the wrongs herein would in effect have required its board of directors to institute suit against themselves and would have been futile.

**42.**    On July 22, 2012, a response was received by the Board acknowledging their wrongdoing and that they were in default of their corporate obligations advising Plaintiff-Representative to simply wait for a resolution of the matters pending and complained of to the Board.

**43.**    Under the circumstances, there is little hope that the demand will ever be faithfully met, more than 90 days have passed and no further demand is necessary.

## VI.
### Pre and Post Merger General Allegations
### of Fraudulent Schemes to Raise Capital

**44.**     Plaintiff-Representative claims, Defendants **VICTOR** and **RHODES** as majority shareholders of **INTELLICELL** control the daily operations of **INTELLICELL,** via illegal-violations  or  otherwise oppressive activities at times with the consent of the Board and at other times clandestinely, where the activities exists in some respects formally, and in others informally as an association-in-fact.

**45.**     Notwithstanding the fact that the **Company** is a publically traded entity which has in excess of 100 shareholders, the shareholders are a minority group of the **Company,** wherein **VICTOR and RHODES** have handpicked Board members who have and are assisting them in the form of insuring that there are no actual internal controls and that the **Company** operates without any oversight concerning the self-dealing transactions and contracts with the wholly owned subsidiaries-Enterprise Entities including **VICTOR DERMATOLOGY & REJUVENATION, P.C., VICTOR COSMECEUTICALS,** INC., **LASERSCULPT,** INC., and the **DOE** Entities 1-5, each as controlled by **VICTOR and RHODES.**

**46.**     The violations and/or oppressive conduct stem from the improper use and solicitation by control persons of **INTELLICELL** in allowing **VICTOR** unrestricted access and use of investor's-licensee's funds and the intentional failure of the **Company** to timely meet the notice and filing requirements of the

SEC to make the **Company's** filings truthful for investors review whereby reason of the foregoing failure to timely publish they are subjecting **INTELLICELL** to liability under the SEC Rules for withholding damaging material information from investors **of INTELLICELL** as related to the fraud in the USPTO application and FDA approval of its adipose stromal vascular fraction stem cell rejuvenation process and the viability of the process.

47.    For the reason that the illegal activities which occur are in connection with the sale or purchase of securities they include violations of lO(b) and 20(a) of the Exchange Act of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b) (the "Exchange Act"), and SEC Rule lOb-5, 17 C.P.R. § 240.lOb-5, promulgated thereunder.

48.    Plaintiff-Representative is informed and believes, Defendants **VICTOR and RHODES** have engaged in similar schemes during the past 10 years pointing to previously executed plans where they have systematically engaged in looting and converting corporate funds through interstate wire communications and the US Mails where those claims allege that they also used the cover of other wholly owned companies which they control to their exclusive benefit and the detriment of shareholders.

49.    Plaintiff-Representative is informed and believes evidence of the present scheme of **VICTOR and RHODES** exists in their past violations of

fiduciary duties, acts of self-dealing, as repeated by their past abuse of investors' capital through majority ownership of the investment vehicle used to launder investors' funds. In the instant case, in the claims **of INTELLICELL** at all times during the Relevant Period, the acts are similar to the past breaches of fiduciary duty the associated fraud and self-dealing.

**50.** In at least two such case, filed in the United States District Court for the Southern District of New York, Index No's. 06CV13292 and 11CV4426, the claims against **VICTOR** were for violations of their fiduciary duties, fraud by false and misleading representations made by **VICTOR** in the offering of investments involving the claimed performance of his medical techniques and acts of self- dealing; claims almost identical to the present complaints in this case.

**A. The Scheme claiming USPTO Filings and FDA Compliance:**

**51.** At all times during the Relevant Period, **VICTOR** m aid provided by **RHODES,** although they knew otherwise, each agreed that in order to raise investment-capital they would need to issue shares and/or franchise licenses under the investment guise that **VICTOR** had invented a process which provides a 97% live cell recovery for use in the SVFSCR Processing of adipose stromal vascular fraction stem cell rejuvenation in human begins; that the process was compliant and covered under section 361 of the Public Health Service Act (PHS Act) [42 U.S.C. 264]; that **VICTOR**

was working with the FDA, where the FDA had determined the process was exempt from FDA requirements of 21 CFR 1271.l0(a)(l).

      **52.**     That to further the scheme, at all times during the Relevant Period **VICTOR** filed for a patent with the USPTO for the processing of adipose stromal vascular fraction stem cell rejuvenation wherein, **VICTOR** in filing his application knowingly altered, or caused to be altered, test data and falsely claimed the process provides a 97% live cell recovery for use in human stem cell procedures in his filings.

      **B.**     **Fraudulent Pre Merger Domestic Licensing Agreements:**

      **53.**     In most instances, in multiple acts of fraud by omission or misrepresentation, during the pre-merger period, November **1,** 2010, through June 11, 2011, while using the wire services and/or mail services of the United States, **VICTOR** issued or caused to be issued numerous false reports and/or false laboratory test results directed to potential investors-licensees containing material factual information which falsely stated that upon application of his processes live stem cell recovery was 97%; that the process was compliant covered under section 361 of the Public Health Service Act (PHS Act) [42 U.S.C. 264]; that **VICTOR** was working with the FDA, where the FDA had determined the process was exempt from FDA requirements of 21 CFR

1271.l0(a)(l).

**54.** At all times during the Relevant Period **VICTOR** knew and was aware that the actual recovery of live stem cells was less than 3%, wherein by reason of intentionally false equipment calibration sequences programmed by **VICTOR,** or at the direction of **VICTOR,** data was recovered and manipulated and otherwise falsified to obtain tissue test results which were presented in a false light where by omission of material facts the test results provided expressly presented false positives for the presence of a 97% recovery of live cells in support of the claimed fraud.

**55.** In consideration for the technology, and in reliance on the foregoing false statements made and claims asserted: (i) on November 1, 2010, Thomas E. Young MD, agreed and paid a licensing fee of $80,000; (ii) on November 15, 2010, R. Craig Saunders agreed and paid a licensing fee of $80,000.

### C. Fraudulent Inducement Merger and Patent Assignment:

**56.** That at all times during the Relevant Period **VICTOR** and **RHODES** though *Intellicell Bioscience Inc.,* an entity organized under, and existing under the laws of the State of New York and wholly owned by them, based on the claims as aforesaid, attracted the attention of a public entity China Wireless Inc., wherein based on the false claims that a 97% live cell recovery was present for

use in the processing of adipose stromal vascular fraction stem cell rejuvenation in human begins; wherein based on the claim that the process was compliant and covered under section 361 of the Public Health Service Act (PHS Act) [42 U.S.C. 264]; wherein based on the claims that he was working with the FDA, and was exempt from FDA requirements of 21 CFR 1271.lO(a)(l) compliance, wherein **VICTOR** would assign the patent to China Wireless for a majority ownership interest in China Wireless *VICTOR-Intellicell BioScience Inc.,* entered into and completed a merger/acquisition agreement wherein since in or about June 2011, **INTELLICELL** exists as the surviving entity of the agreement.

57.    At all times during the Relevant Period fully knowing of the foregoing false claims, and intending to maintain control **of INTELLICELL** and its Board, **VICTOR** assigned said patent to the **Company** for a majority ownership of **INTELLICELL** to himself and an additional percentage to his wife **RHODES.**

58. At all times during the Relevant Period so as to continue to illegally raise capital said interest has been used to control **INTELLICEL's** Board, wherein said control is being used in violation of **VICTOR's and RHODE's** fiduciary duties to **INTELLICELL** and its shareholders by shielding discovery or removal of their organized :fraudulent activities which are designed to hide the foregoing facts in the failure of the SVFSCR Process to perform as it has been expressly stated to investors-licensees and otherwise as reported to the USPTO, SEC, FDA and in

Public filings.

### D.    Post-Merger Investors-Licensees Fraud in the Inducement:

**59.**    After taking control of **INTELLICELL,** the specific acts of fraud
include that after June 2011, on or about November 19, 2012, **INTELLICELL,**
with the knowledge of its Board, so as to fraudulently induce investors-
licensees subscription preferred shareholders into believing that the process was
not subject to FDA requirements of 21 CFR 1271.lO(a)(l) so as to be
compliant, based on the **Company's** exemption under section 361 of the Public
Health Service Act (PHS Act) [42 U.S.C. 264]; that it had been notified and
assigned an FDA validation registration number 3009842420, wherein the
**INTELLICELL** issued a press release misrepresenting its claim   that   its'
facility located at 460 Park Avenue, New York, New York ("facilities"), was
effectively being registered-compliant to recover, process, package, store, and
label human cells and tissue products (HCT/P's) for treatment, sale, and
distribution.

**60.**    Thereafter, during the Relevant Period commencing November 2012,
the FDA began formal review and physical inspection of the **INTELLICELL** facilities
and stem cell processes, wherein the FDA found and notified **VICTOR** and the Board
of numerous federal and administrative violations as related to facility and protocols
including findings that **INTELLICELL** was in violation of good tissue practice and

good manufacturing practices; that **VICTOR's** laboratory failed to insure appropriate laboratory testing; that the procedures undertaken by the **INTELLICELL** were in violation of the law failing to meet the standards required pursuant to 21 CFR 1271.lO(a)(1 ) and were not exempt as a medical procedure and was in fact regulated as a drug rendering the process to the mandates of 21 CFR 1271.l0(a)(l) compliance.

 **61.** During the Relevant Period, **VICTOR** and **INTELLICELL'S** Board were notified in writing by the FDA of the foregoing, knew and were aware but intentionally ignored the facts as aforesaid and intentionally withheld notice and filing with the SEC and/or publication to its investors-licensees.

 **62.** During the Relevant Period **VICTOR** and the Board had entered into subscription agreements with investors for a series of **INTELLICELL'S** preferred shares fully knowing that the agreements entered into by preferred shareholders were not set for closing until February 28, 2012.

 **63.** During the Relevant Period **VICTOR** and the Board in violation of the law, intentionally failed to advise the subscription- investors that **INTELLICELL' s** SCRP did not meet the standards required pursuant to 21 CFR 1271.l0(a)(1 ), et anos.

 **E.** **Fraudulent Subscription Sales of preferred Securities:**

 **64.** In performance of the fraud in the sale of preferred securities **INTELLICELL' s** Board knew of the actual falsified data and laboratory testing

orchestrated by **VICTOR;** the false filings with the USPTO through its employees, the written and verbal warnings-findings of the FDA as of November 2012, and that a closing date of February 28, 2012 had been set for the closing and delivery of investors' funds to **INTELLICELL.**

     **65.**    In performance of the fraud in the sale of preferred securities **INTELLICELL's** Board and **VICTOR** intentionally failed to timely disclose the true lab results and actual data as well as the FDA warnings-findings to the investors and the general public concerning the truth about the status of the USPTO pending patent and FDA approval of its stem cell processes wherein, although they knew of the foregoing omissions, **VICTOR** and the Board without disclosing the foregoing the Defendants offered for sale preferred securities obtaining investment funds from the following individuals issuing the following number of preferred shares and on the following dates where, but for the failure to disclose said information to the investing-shareholders, said shareholders would not have entered into subscription agreements upon the terms presented:

| Shareholder: | Date Purchased: | Amount funded: |
| --- | --- | --- |
| A L Berry | January 1, 2012 | $20,000.00 |
| Alter Rubin | February 11, 2012 | $50,000.00 |
| Barry Zeffren | February 12, 2012 | $25,000.00 |
| Cranshire Master | February 14, 2012 | $45,000.00 |
| David Levy | February 15, 2012 | $25.000.00 |
| Edward Borelli | March 3, 2102 | $10,000.00 |
| Ezra Birnbaum | February 28, 2012 | $40,000.00 |

| Whitefish Group LLC | February 15, 2012 | $150,000.00 |
| Leo Kohn | February 17, 2012 | $10,000.00 |
| Ellis International Ltd. | February 12, 2012 | $200,000.00 |
| Next View Capital LLC | February 22, 2012 | $150,000.00 |
| Noah Berkowitz | February 17, 2012 | $15,000.00 |
| Raphael Harari | February 20, 2012 | $500,000.00 |
| Road Holdings LLC | February 23, 2012 | $125,000.00 |
| Ronal Cons | February 9,  2012 | $250,000.00 |
| Ronald Lukes | February 22, 2012 | $45,000.00 |
| RPSMSS | February 16, 2012 | $125,000.00 |
| WhiteStar LLC | February 20, 2012 | $500,000.00 |
| | Total | $2,285,000.00 |

**66.**        But for the failure of the **Company to** disclose the USPTO and FDA results in the **Company's** SEC filings or otherwise publishing said information, as well as the false and otherwise misleading laboratory and test results as noticed to **VICTOR** and the Board b y i t s **INTELLICELL's** employees the forgoing individuals would not have invested or otherwise entered into subscription agreements with **INTELLICELL** on the terms offered or otherwise negotiated.

### F.    Fraudulent Post Merger Domestic Licensing Agreements:

**67.**        Shortly after acquiring control of **INTELLICELL** in July 2011, **VICTOR** and the Board, although **INTELLICELL** had not yet received USPTO or FDA approval for its stem cell adipose process, and under

circumstances where the Board knew or should have known that the results of the process as claimed by **VICTOR** were not as reported and were in fact false by reason of the altered test result and other laboratory altered data reported to them by reason of complaints tendered by employees, independent contractors and/or licensees as directed to the members of the Board concerning the claims that **VICTOR** was altering test and lab results and otherwise falsifying information, that despite these warnings without a full investigation of the claims, the Board agreed to continue to allow the Company to issue subscription agreements for preferred shareholders, allowed both domestic and international licensing agreements to be issued without disclosing the true facts concerning the viability and claims associated with the **VICTOR's- INTELLICELL' s** stem cell adipose process.

**68.** At all times during the Relevant Period based on the false claims and in reliance on those claims in a acts of fraud by omission, concerning both the reports of **INTELLICELL** employees, and others, as well as with knowledge of the findings of FDA inspection commencing November 2011, without disclosing the forgoing material facts the **Company,** with the consent of and with the knowledge of the Board entered into both domestic and international exclusive lab services agreement and the sale of securities.

**69.** At all times during the Relevant Period, as of the dates assigned

hereof, the **Company** via assignment of pre-merger contractual obligations or by reason of post-merger activities entered into licensing agreements covering the areas of Philadelphia, Pennsylvania, Dallas/Ft. Worth, Texas, Palm Beach, Florida, Metairie, Louisiana, Lake Mary, Florida, Denver, Colorado, Sugarland, Texas and Baton Rouge, Louisiana.

      **70.**      At all times during the Relevant Period based on the false claims and in reliance on those claims (i) on February 12, 2011, Foursight LLC, agreed and paid a licensing and equipment fee of \$45,000; (ii) on February 28, 2011 Dauterive Medical, Inc. agreed and paid a licensing fee; (iii) on April 29, 2011, AGE Management LLC, agreed and paid a license fee of \$80,000; on June 14, 2011,(iv) AllWin Scientific Corporation, agreed and paid a license fee of \$80,000; (v) on June 27, 2011, PBH Holdings, LLC, agreed and paid a licensing fee of 60,000,(vi) on July 6, 2011, Regenerative Laboratory Services of Baton Rouge, LLC, Regenerative agreed and paid a license fee of \$80,000.

      **71.**      That by reason of the false and otherwise misleading laboratory and test results, involving **VICTOR's** stem cell process, Foursight LLC, Dauterive Medical, Inc., AGE Management LLC, AllWin Scientific Corporation, PBH Holdings, LLC, have each discovered the fraud-nondisclosure and have demanded repayment from the **Company** the

licensing fees paid by them together with other damages subjecting the **Company** to legal action based on the fraud related to the USPTO patent-Lab deficiencies, FDA warning-findings and their nondisclosure in the **Company's** SEC filings.

### G. Fraudulent Post Merger International Licensing Agreements:

**72.**   At all times during the Relevant Period the **INTELLICELL** issued licenses covering the territories of Canada, Australia, New Zealand, and Thailand.

**73.**   At all times during the Relevant Period based on the false claims and in reliance on those claims (i) On December 15, 2011, in an act of fraud by omission, concerning both the reports of **INTELLICELL** employees, and others, as well as with knowledge of the findings of FDA inspection commencing November 2011, without disclosing the forgoing material facts **INTELLICELL** with the consent of and with the knowledge of the Board entered into an exclusive lab services agreement with Regenastem, Inc., a Canadian corporation granting them as a licensee the exclusive right and to utilize **INTELLICELL's** proprietary process as well as **INTELLICELLS's** trademarks for the purpose of providing tissue processing services for humans and animals in Canada.

**74.**   In addition, Regenastem, Inc., agreed to invest $500,000 **INTELLICELL's** Series D Preferred Stock financing, $250,000 of

which was invested in December 2011 after the signing of the license and the remaining $250,000 of which was invested in January 2012.

**75.**  That by reason of the false and otherwise misleading laboratory and test results, upon application of **VICTOR's** and the **Company's** stem cell process Regenastem, has discovered the fraud-nondisclosure and demanded repayment of its fees subjecting **INTELLICELL** to legal action based on fraud and nondisclosure.

### H.    Australia and New Zealand License Agreement:

**76.**  On December    16, 2011, in an act of fraud by om1ss1on, concerning both the reports of **INTELLICELL** employees, and others, as well as with knowledge of the findings of FDA inspection commencing November 2011, without disclosing the forgoing material facts the **Company** with the consent of and with the knowledge of the Board entered into an exclusive lab services agreement with Cell-Innovations Pty Ltd an Australian corporation granting them as a licensee the exclusive right and to utilize **INTELLICELL's** proprietary process    as    well as **INTELLICELL's** trademarks for the purpose of providing tissue processing    services for humans in Australia and New Zealand.

**77.**  In consideration for the grant of the exclusive license, the licensee agreed to pay **INTELLICELL** a one-time license fee of $700,000 payable upon the execution of the agreement.

**78.**    That by reason of the false and otherwise misleading laboratory and test results, upon application of the **VICTOR** the **Company's** stem cell process, Cell-Innovations Pty Ltd, has discovered the fraud-nondisclosure and demanded repayment of its fees subjecting **INTELLICELL** to legal action based on fraud and nondisclosure.

### I.    Thailand Agreement:

**79.**    On April 17, 2012, in an act of fraud by omission, concerning both the reports of **INTELLICELL** employees, and others, as well as with knowledge of the findings of FDA inspection commencing November 2011, without disclosing the forgoing material facts **INTELLICELL** with the consent of and with the knowledge of the Board entered into an exclusive lab services agreement with StemCells 21 Co., Ltd., subject to the laws of the Kingdom of Thailand granting them as a licensee the exclusive right and to utilize **INTELLICELL's** proprietary process as well as **INTELLICELL's** trademarks for the purpose of providing tissue processing services for humans in Thailand.

**80.**    In consideration for the grant of the exclusive license, the licensee agreed to pay us an up-front license fee of $1,000,000 payable as follows: (i) an initial installment of One Hundred Fifty Thousand Dollars ($150,000) upon

execution of the agreement; (ii) One Hundred Thousand Dollars ($100,000) within three (3) days of the completion of the Lab Equipment (as defined in the agreement) having been delivered and installed (in accordance with applicable cGMP's and cGTP's of the US FDA) and the Lab Technician (as defined in the agreement) for the initial Laboratory Facility (as defined in the Thailand Agreement) having completed training; and (iii) the balance of Seven Hundred Fifty Thousand Dollars ($750,000) to be placed in escrow with counsel for the **Company** upon the payment of the second installment, with such funds to be held in escrow for a period of ninety (90) days, with such funds to be released upon satisfaction by the parties that the Lab Equipment is in working order and the Lab Technician has been adequately trained.

**81.** That by reason of the false and otherwise misleading laboratory and test results, upon application of **VICTOR's** stem cell process StemCells 21 Co., Ltd., has discovered the fraud-nondisclosure and demanded repayment of its fees subjecting the **Company** to legal action based on the fraud and nondisclosure.

**82.** At all times during the Relevant Period, the licensees have noticed **VICTOR, the Company** and its Board of the fraud and default and/or non-compliance with the duties, obligation or responsibility

imposed upon them by the agreements and that said licensees intend to pursue their legal remedies wherein damages are anticipated to be m excess of \$5,000,000.00.

### J. Fraudulent Debenture Agreements:

**83.** Beyond the foregoing, in performance of the scheme to defraud the investors, the fund raising activities of **VICTOR** and **RHODES** were financed by the sale of the **Company's** convertible debentures where **VICTOR, RHODES** and the Board know in advance that they will not honor the terms of the debenture agreements where they act intending to default on payments and delivery of the **Company's** stock to the purchasers so as to generate funds using the facade of the public **Company** while maintaining control of the **Company's** funds.

**84.** During the Relevant Period the **Company,** via **VICTOR** and **RHODES** in the name of **INTELLICELL** presented subordinate convertible debenture agreements ("Agreements") tendering said Agreements to the public wherein the maturity dates have come and gone and where due demand for payment of conversion has been made where the **Company** has refused to do the same.

**85.** During the Relevant Period the **Company** received investors funds by the following individuals in the following amounts:

| Investor | Amount | Undelivered Shares |
|---|---|---|
| Jeffrey Kaplan | $100,000 | 221,772.00 |
| Paul Becker | $50,000 | 110,886.00 |
| Marilyn Adler | $10,000 | 22,177.00 |
| Scott Stevens | $25,000 | 55,443.00 |
| Walter Schenker IRA | $50,000 | 110,886.00 |
| JSA Investments LLC | $100,000 | 221,772.00 |
| Thomas & Barbara Amato | $50,000 | 10,886.00 |
| Daniel Walsh | $50,000 | 110,886.00 |
| Joseph Salvani | $50,000 | 110,886.00 |
| Neville Dauterive | $25,000 | 55,443.00 |
| Ken West | $25,000 | 55,443.00 |
| Guy Mike Dart | $80,000 | 177,418.00 |
| Walter Schenker IRA | $50,000 | 110,886.00 |
| Glenn and Theresa Boldue | $20,000 | 44,354.00 |
| Nathan Pollack | $100,000 | 221,772.00 |
| Mendel Blumberg | $500,000 | 1,108,860.00 |
| Michael Ghiselli | $100 000 | 221 772.00 |
| Totals | $1,385,000 | 2,971,542.00 |

**86.**     To date, despite the maturity date of payment and/or conversion having passed, in furtherance of the control intentionally maintained by **VICTOR, RHODES** for their personal benefit, the **Company,** despite due demand for the holders of the **Company's** debentures to the Board, the **Company** remains in default of its financial obligations in the foregoing amounts to the foregoing debenture holders.

**87.**     At all times during the Relevant Period, the note holders have noticed **VICTOR,** the **Company** and its Board of the fraud and default and/or non-compliance with the duties, obligation or responsibility imposed upon them by the agreements and that said investors intend to pursue their legal remedies wherein damages are anticipated to be in excess of $5,000,000.00.

## VII.
### Victor's Improper Use Of Investors' Funds And Other Oppressive Conduct Sanctioned By The Board

88.    After insuring the funds were secured and since at least during the early stages of the Relevant Period from post-merger through and continuing to the present, **VICTOR and RHODES** have engaged in multiple schemes designed to control **INTELLICELL's** Board and investor's funds and hidden the actual amounts of money they are paid or the **Company** is reimbursed under the terms of agreement entered into with the Enterprise Entities they control and the Company.

89.    The schemes most often involve **VICTOR'S** medical license and claims involving the value and viability of the **Company's** SCRP assigned by him.

90.    The schemes are designed to work through a series of shell corporations, or other business entities, controlled by Defendants **VICTOR** and **RHODES** including interrelated and direct transactions with the Enterprise Entities, **VICTOR DERMATOLOGY, VICTOR COSMECEUTICALS, LASERSCULPT,** and/or the **DOE ENTITIES.**

91.    Despite the duties to **INTELLICELL** and its investors, **VICTOR** and **RHODES** engaged in these transactions looting of the **Company's** funds

through various schemes designed to insure non-disclosure of the true facts to the **Company's** investors or the SEC as required through their public filings.

**92.** At all times material hereto, these related transactions involve payments made to **VICTOR and RHODES** which were not fully disclosed by the **Company** in its reported filings or were by omission or failure to act adopted by the Board without consideration to the self-dealing terms of the transactions. Consequently, they were not fully disclosed in **RHODES's** SEC filings when they were reported.

**93.** Because defendants dominate and control the business and corporate affairs of **INTELLICELL** and are in possession of private corporate information concerning **INTELLICELL's** funding, assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of the **Company** which makes it inherently unfair for them to execute and pursue these agreements under which they have reaped disproportionate benefits to the exclusion of maximizing stockholder-investors' value and to the detriment of the **Company.**

**94.** The Enterprise activities-acts are progressive and continuing and accomplished by failing to maintain arm's length transactions, engaging in self-dealing contracts while using the **Company's** funds;

failing to file proper debt instruments with the **Company** for the use of the funds, or otherwise in failing to assign certain business undertakings-contracts and/or other assets which were acquired with **Company** funding and are by reason of the self- dealing being maintained as the private property of **VICTOR and RHODES** as majority shareholders of the Enterprise Entities.

95.     Plaintiff-Representative is informed and believes, these illegal activities are carried out by oral and written communication between **VICTOR, RHODES** and the Board and oppressive to the **Company** and the rights of all other shareholders and investors alike.

96.     Plaintiff-Representative is informed and believes, that in connection with the transactions, acts, practices, and courses of business described in this Complaint, the defendants, **VICTOR and RHODES** directly and indirectly, have used the means or instrumentalities of interstate commerce, involving use of the mails, and/or the means and instruments of transportation or communication in interstate commerce or through means of telegraphic transmission in violation the mail, and wire fraud statutes.

97.     Plaintiff-Representative claims, Defendants **VICTOR and RHODES** are majority shareholders of the Enterprise Entities where **VICTOR** is acting as the

hub of the illegal Enterprise activities, where control exists in some respects formally, and in others informally as an association-in-fact.

98.     **RHODES** has directly aided and abetted **VICTOR** in an agreement among them to control the public **RHODES** by omission of material facts while using the cover she maintained as a Board member in approving the Enterprise Entities contracts with the **Company** which were designed to drain off investors' funds for **VICTOR's and RHODE's** own uses with little or no benefit to **INTELLICELL.**

### A. The Lease and Build Out Scheme

99.     Almost immediately after the closing on the respective investments, **INTELLICELL's** Board, at the direction of **VICTOR** and **RHODES** breached critical covenants regarding the use of the investment proceeds, choosing instead to misappropriate those proceeds for the personal use of **VICTOR and RHODES** in the creation or operations of **VICTOR DERMATOLOGY** and other Doe Entities.

100.     Plaintiff-representative is informed and believes, that for instance, both **VICTOR and RHODES** are salaried employees of the **Company** but have waived their salaries so as to conceal public disclosure of the real sums they have been paid thorough the Enterprise Entities.

**101.**    Notwithstanding the foregoing, Defendants **VICTOR and RHODES** have structured their salaries and commission and equity in the Enterprise Entities, which are the direct beneficiaries of the **INTELLICELL** funding, without disclosing the payments or actual ownership interest to themselves in the **Company's** electronic SEC filings, wherein said payments amount to a disproportionate salary and other payments in equity and are in a manner oppressive or otherwise in direct conflict with their fiduciary duties to **INTELLICELL.**

**102.**    On point of this matter, instead of attempting to negotiate contracts-leasehold agreements reflecting the best consideration reasonably available for the stockholders of **INTELLICELL** defendants **VICTOR and RHODES** through their control of the Board have spent a substantial effort tailoring the contracts-agreements to meet their specific needs and the needs of the Enterprise Entities and not **INTELLICELL.**

**103.**    In particular, in or about 2011, **VICTOR and RHODES** negotiated a fixed term lease, for space located at 460 Park Avenue, New York, New York leasing the premises back to the **Company** making the **Company** liable for the rent and having to pay for the build out during a time that neither patent nor FDA approval has been received for the SVFSCR Process.

**103.** Upon information and belief, the built out facilities were undertaken in the name of VICTOR **DERMATOLOGY** using $2.5 million of **INTELLICELL's** funding.

**104.** The lease is unassigned and the build-out did not add value to the **Company** that would have justified the use of proceeds, nor were any documents produced which would provide for secured debt for return of funding to the **Company.**

**105.** Plaintiff-Representative is informed and believes, and even more evidence of their self-dealing is the fact, that the lease and build out which was supposed to be for the benefit of the **Company** was significantly marked-up in the cost of construction to accommodate for the presence of the Enterprise Entities in the same space used by the **Company** with little or no cost to them and with little or no value added to the **Company** to justify the use of the **Company's** capital, especially for the reason that there is a lack of FDA approval of the **INTELLICELL** processes used as the claim for **INTELLICELL** funding and where **INTELLICELL** was to be paid a fee for the use of the SVFSCR Process.

**106.** The construction cost was paid with funds raised from a use of proceeds where the investors were unaware that their funds were being diverted for

use by an entity or entities which were not a wholly owned subsidiaries of the **RHODES** wherein the overhead and other cost of operations was to be borne by the **Company** without a benefit in relation to the expenses.

107. The termed general operating expense a description for use of proceeds was intentionally vague and otherwise intended to further the fraudulent SEC filings by omissions.

108. Notwithstanding the fact that the funds were taken to be used for the payment of the build out **VICTOR** failed to make payment to the contractor and at one point in time owed in excess of $440,000.00.

109. Likewise, upon information and belief, the lab and equipment had or has liens and are now subject to seizure.

110. Plaintiff-Representative is informed and believes, Defendants **VICTOR** and **RHODES** also ensured that the lease contracts would be structured so as to effectively prevent any claims for possession or control of the assets or the premises from materializing in the event he and **RHODES** were removed from their position of control of the **Company,** meaning covenants have been inserted into agreements so as to insure the Enterprise Entities-VICTOR and **RHODE's** control of the assets.

111. In short, the leasehold and improvements were designed to unlawfully divest the **Company's** public stockholders of a large portion of the valuable assets

**of INTELLICELL,** while making the **Company** liable for the lease and for grossly inadequate consideration when **VICTOR, RHODES** and the Board knew that the leasehold interest would be a substantial asset of the **Company** and instead remains an asset of the Enterprise **Entities-VICTOR** and **RHODES.**

### B. RHODES' Fictitious Finder's Fee Scheme

**112.** Plaintiff-Representative is informed and believes, that in another scheme, on February 6, 2012 **VICTOR** paid **RHODES** a finder's fee-bonus of $25,000.00 from the **Company's** checking account for a claimed capital raise even though the she did nothing to earn the fee and that any activities associated with payment to her required of her in the regular course of her official duties.

### C. LASERS' Use of Funds Scheme

**113.** Plaintiff is informed and believes, that in another scheme **VICTOR** used money and paid for an infomercial wherein the Defendants created another entity-LASERSCULPT, INC., that advertised on television in both New York and Pennsylvania generating income from the interstate advertising for laser body sculptor. The ads were paid for with investor dollars and used to generate income via interstate activity by means of electronic transmission without any payment to **INTELLICELL.**

## IX.
## The Boards Willful and Intentional Failure To Pay
## Employees Wages, False Tax Withholdings And False Filings

**114.**  Plaintiff-Representative is informed and believes, that at all times during the Relevant Period the **Company** employed certain individuals as support personnel including Sarah R. Young as a LAB Director and Quality Assurance Officer; Natasha Labban, medical assistant and consultant; Jonathan Schwartz, Vice President of Sales and Marketing; and Robert Sexauer, as Executive Vice President of Clinical Studies.

**115.** Plaintiff-Representative is informed and believes, that at all times during the Relevant Period these foregoing employees were salaried employees under contract having executed W-4s where the **Company** and Board members in their fiduciary capacities were required to accurately report wages and withholdings making payments as fiduciaries into state and federal tax treasuries or local governments for unemployment.

**116.**  Plaintiff-Representative is informed and believes all withholding or other payroll taxes were set forth under the terms of their employment agreements with the **Company** and that it was the responsibility of the **Company** and the Board to insure that the withholding were accurately reported and paid and not the employees.

**117.**    Plaintiff-Representative is informed and believes, that at all times during the Relevant Period that at the direction of **VICTOR and RHODES** the Board, at times intentionally misidentified wages falsely filing 1099's, in the names of the foregoing employees wherein the **Company** issued employees checks while it withheld the full portions of the wages earned and taxable but intentionally under reported or otherwise failed to report the withholdings or pay into the treasury accounts as required keeping the money for the operations of **INTELLCELL** or directly for their own personal use.

**118.**    Plaintiff-Representative is informed and believes, that at all times during the Relevant Period the **Company** owes wages and/or the **Company** benefits to Sarah R Young in excess of $30,000.00, Natasha Labban in excess of $20,000.00, Jonathan Schwartz in excess of $65,000.00, and Robert Sexauer in excess of $250,000.00 and that although due demand had been made and received by the **Company, the Company** had neglected or refused to make payment of wages owed.

**119.**    The Board's withholding and subsequent evasion of the payment of the forgoing employee wages and withholdings together with the misclassification of Plaintiffs wages amounts to a violation of their fiduciary duties of the Board while engaging in tax evasion subjecting the **Company** to both state and federal prosecution as well as the claims of the individual employees.

**X.**

**The Board's Willful/Intentional/Reckless/Negligent and/or Grossly Negligence Response To The Reported Improper Lab-Techniques And False Recordings By Victor So As To Obtain A Patent And Otherwise Claim To Be FDA Compliant Including But Not Limited To The Following Acts Of Improper Or Fraudulent Lab-Techniques Recordings/Filings**

**120.** During the Relevant Period **INTELLICELL** employees reported **VICTOR's** fraud and data tampering to the Board including:

a.    During the Relevant Period, **VICTOR** instructed employees to fabricate and back-record temperatures and humidity data from the months of January, February and March of 2013 when data was lost on the Dickson Temperature Logger.

b.    During the Relevant Period, at the direction of **VICTOR** Data identifiers for cell samples were altered in the Millipore laptop months after entry testing and later saved under different file names to be used as fake data sets.

c.    During the Relevant Period, at the direction of **VICTOR** Data was also fabricated for the use in U.S. Patent Application Serial No. 13/323,030 entitled "Ultrasonic Cavitation of Adipose Tissue to Produce Stromal Vascular Fraction Regenerative Cells."

d.    During the Relevant Period, at the direction of **VICTOR** if the cell preparation did not pass QA standards of 80% viability and a minimum of qualifying cell counts of 50 million cells, **VICTOR** in excess of 10 times manipulated the parameters of the Millipore machine until he got the desired test results.

e.    During the Relevant Period, **VICTOR** and the Board knew and was aware that cells were dead and that the harvest

was less than 3% and most often not at all but intentionally failed to disclose the information as required altering log and data to conceal the true results.

f. During the Relevant Period, **VICTOR** and the Board knew and was aware as advised by multiple licensees that the cells tested were not alive, but dead extracellular matrix and that the lasers on the Millipore machine was in fact counting small lipid droplets and not live cells.

g.      During the Relevant Period, at the direction **VICTOR** testing cartridges were not obtained to test for levels of bacterial activity wherein false recording was made documenting that the cells were tested and passed, when in fact they were not verified.

h.      During the Relevant Period, **VICTOR** advised patients that he could cure them of any disease in violation of medical and laboratory protocols established by the FDA.

i. During the Relevant Period, the Board knew and was aware that the medical freezer remained full of adipose tissue that was used for practice testing which was unlabeled in 60cc syringes without patients identifying makers for comparison and cross-check.

j. During the Relevant Period, the Board knew and was aware that the probe for the ultrasonic cavitator corrodes used during the procedures to releases particles of titanium into the IV cell product was unverified for toxicology/heavy metal studies alter the data and results.

k.      During the Relevant Period, the Board knew and was aware that Bio-hazardous waste was being thrown out in the regular trash because **VICTOR** would not pay for Stericycle to pick- up during the period from August 2012 to March 2013.

l.      During the Relevant Period, the Board knew and was aware that Consents were not performed verbally nor

documented SVF cases for NY13D002 so as to cover this mistake consents were back dated a week later and emailed to the patients to sign and return to the office.

m.    During the Relevant Period, **VICTOR** and the Board knew and was aware and used the R&D only Millipore labeling "Not for human use" but were used on human subjects.

n.    During the Relevant Period, **VICTOR** and the Board knew and was aware that the autoclave failed the weekly Biological Indicator runs and was failing runs by not getting up to a high enough temperature. The temperature gauge did not work correctly to 20 degrees accuracy but was not repaired wherein data and testing although used was not accurate.

o.    During the Relevant Period, **VICTOR** and the Board knew and was aware that sonicated cells returned to the patient after processing were in fact in apoptosis or were dead and dying cell population, not live, viable cells as is claimed were used in the procedure.

p.    During the Relevant Period, **VICTOR** and the Board knew and were aware of the foregoing, as noticed by email dated April 7, 2013 from Robert Sexaur giving a report received from Rutgers: "The initial reports from Rutgers University and Professor Kohn and Dr. Mao, an industry qualified cell biologist, is that the Intellicell cell population ls primarily a dead cell population."

q.    During the Relevant Period, **VICTOR** and the Board knew and was aware and intentionally made false claims that the process was culturing and successfully growing stem cells in the lab.

r.    During the Relevant Period, **VICTOR** and the Board knew and were aware that Cells were sent to University of Miami, the University of Florida, to Rutgers University and in each instance they did not grow.

s.      During the Relevant Period, **VICTOR** and the Board knew and were aware that Victor was conducting unregistered clinical trials. Using SVF and Platelet Rich Plasma (PRP) eye serum using the patient's own growth factors from their own blood.

t.      During the Relevant Period, **VICTOR** with the Board's knowledge purchased equipment and supplies without having intention or the means to pay for them but received money from licensees.

u.      During the Relevant Period, **VICTOR** with the Board's knowledge wrote prescriptions to investor without a clinical need as and for an "INVESTMENT INCENTIVE".

**121.**   During the Relevant Period, the Board knew and was aware that by reason of the foregoing reporting activities by the **Company's** Quality Assurance Officer, Sarah R. Young of **VICTOR's** illegal activity wherein the Board took no action.

## XI.
### The Intentional And Willful False Arrest Of Sarah Young
### For Whistle Blowing And The Board's Failure To Act

**122.** During the Relevant Period, **VICTOR** with the board's knowledge, where the Board was fully aware of the true facts and the intentions of Sarah R. Young to go to the authorities concerning the fraud and illegal activities of **VICTOR,** the Board did allow the intentional and willful false arrest and confinement of Sarah R. Young so as to force her to turnover material which **VICTOR** and the Board knew was damaging and further knew

was evidence of data fraud concerning the viability of SVFSCR Process where said information was the lawful property of Sarah R. Young and which contained proof of her claims of fraud as set forth above.

123.    During the Relevant Period, **VICTOR** with the Board's knowledge where the Board was fully aware of the wage claims and reports of wrongdoing by Sarah R. Young as set forth above did participate in, allow, authorize or failed to take action to prevent the false arrest and confinement of Sarah Young under circumstances where they knew that the true purpose of the arrest was to intimidate create fear, emotional distress and otherwise gain an advantage in her claim for wages and credibility.

124.    That by reason of the foregoing, Sarah R. Young has Notified **VICTOR,** the **Company** and the Board of her claims wherein she has demanded the sum of $25,000,000.00 in damages for false arrest-confinement, witness intimidation and emotional distress wherein, **VICTOR,** the **Company** and the **INDIVIDUAL** Board members are liable to Sarah R. Young for her claims.

## VII.
## Intellicell's Intentional Failure to Timely Disclose

125.    At all times during the Relevant Period, the **Company** and its Board were required to timely prepare and file accurate 8-K's and/or 0K's with

the SEC for public disclosure of significant events and/or accuracy in the operations of the **Company,** wherein commencing in or about November 2011, **VICTOR** and the Board had been notified of the failure of the Lab to pass inspection and of **INTELLICELL's** noncompliance with the FDA Regulations, Federal Codes and the claimed State law violations.

126.   During the Relevant Period, in performance of the scheme to raise capital **INTELLICELL's** Board on March 30, 2012, intentionally notified the SEC and presented in its Public filings that it was delaying its filings of the **Company's** Form 1OQ, without disclosing the foregoing FDA warnings – findings wherein the reasons published were knowingly false and otherwise misleading by omission in furtherance of the Boards support of the intended fraudulent activity designed to allow the **Company** to continue to raise capital without timely disclosing the warnings-findings of the FDA and in particular their warning letter of March 13, 2012.

127.   At all times during the Relevant Period, although the Board knew and was aware of the FDA warnings-findings and other violations as set forth above since November 2011, it intentionally failed to timely file a Form SK concerning the matters and it was not until once the **Company** had secured the funds from the foregoing investors, and others, as set forth above that on April 3, 2012 **INTELLICELL** filed its Form SK in which it advised the SEC of

the true facts, known by them since November 2011, as set forth in the paragraphs above and/or the public.

**128.** That in the performance of the frauds aforesaid, **INTELLICELL's** Board intentionally failed to do so in violation of l O(b) and 20(a) of the Exchange Act of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b) (the "Exchange Act"), and SEC Rule I Ob-5, 17 C.P.R. § 240.1Ob-5, promulgated thereunder.

**129.** As a result of defendants' omissions, and aid **INTELLICELL's** common stock traded at artificially inflated prices creating a false sense of worth in the value of the **Company's** stock such that investors and licensees relied on the value as believed set in the market.

**130.** However, after these revelations were disclosed to the public, the **Company's** stock price plummeted nearly 97% from their Relevant Period hindering the **Company's** ability to raise capital for continued research so as to become compliant with the FDA's review process.

**131.** But for the failure of **VICTOR** and/or the Board to disclose the true facts and otherwise by the omission of material facts, the aforesaid group of shareholder and investors-licensees would not have invested in **INTELLICELL.**

## XII.
## Duties of the Individual Defendants

**132.**    By reason of their positions as officers and/or directors of the **Company,** and because of their ability to control the business and corporate affairs of the **Company,** the Individual Defendants owed the Company **and** its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were, and are, required to use their utmost ability to control and manage the **Company** in a fair, just, honest, and equitable manner.

**133.**    The Individual Defendants were, and are, required to act in furtherance of the best interests of the **Company and** its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interests or benefit and by reason of the foregoing have failed to do so.

**134.**    Each director and officer of the **Company** owed to **INTELLICELL** and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the **Company** and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

**135.**    In addition, as officers and directors of a publicly held **Company,** the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the **Company's** warnings

and applications status with the FDA, the **Company's** revenue, margins, operations, performance, management, projections, and forecasts, so that the market price of the **Company's** stock would be based on truthful and accurate information.

136.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of **INTELLICELL,** were able to, and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the **Company.**

137.    Because of their executive, managerial and/or directorial positions with **INTELLICELL,** each of the Individual Defendants had access to adverse, non-public information about the matter pending for FDA Approval and the **Company's** financial condition, operations, and the misrepresentations made.

138.    At all times relevant hereto, each of the Individual Defendants was the agent of the other Individual Defendants and of **INTELLICELL,** and was at all times acting within the course and scope of such agency.

139.    In order to discharge their duties, the officers and directors of **INTELLICELL** were required to exercise reasonable and prudent

supervision  over the management, policies, practices  and controls of the financial affairs of **INTELLICELL** and failed to do so.

    **140.** By virtue of such duties, the officers and directors of **INTELLICELL** were required to, among other things to:

    a.  manage, conduct, supervise and direct the business affairs and scope of such agency.

    b.  manage, conduct, supervise and direct the business affairs of **INTELLICELL in** accordance with all applicable laws;

    c.  neither violate, nor knowingly permit any officer, director, or employee of **INTELLICELL** to violate, applicable laws, rules and regulations;

    d.  establish and maintain systematic and accurate records and reports of the business and affairs of **INTELLICELL** and procedures for the reporting of the business and affairs to the Board and to periodically investigate, or cause independent investigation to be made of **VICTOR** and **RHODES,** and to the accuracy of reports and records;

    e.  neither engage in self-dealing, nor knowingly permit any officer, director or employee of **INTELLICELL** to engage in self- dealing; and

    f.  ensure that the **Company** complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public; and

    g.  conduct the affairs of the **Company** in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the **Company's** assets, and to maximize the value of the **Company's** stock; and

    h.  properly and accurately guide investors and analysts regarding the true financial condition of . the **Company** at any given time, including making accurate statements about the **Company**'s financial results and prospects, and ensuring that the **Company** maintained an adequate

system of financial controls such that the **Company**'s financial reporting would be true and accurate at all times; and properly and accurately guide investors and analysts regarding the true condition of the **Company's** patents and medical facilities at any given time, including making accurate statements about the **Company's** Dealings with the FDA and prospects, and ensuring that the **Company** maintained an adequate system of medical controls such that the **Company's** SEC reporting would be true and accurate at all times; and

i. remain informed regarding how to properly and accurately guide investors and analysts regarding the true financial condition of the **Company** at any given time, including making accurate statements about the **Company**'s financial results and prospects, and ensuring that the **Company** maintained an adequate system of financial controls such that the **Company**'s financial reporting would be true and accurate at all times; and conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws.

**141.** Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the **Company** and its shareholders the fiduciary duties of loyalty, good faith, the exercise of due care and diligence in the management and administration of the **Company** affairs as well as in the use and preservation of its property and assets.

**142.** The conduct of the Individual Defendants alleged herein involves numerous violations of their obligations as directors and/or officers of **INTELLICELL,** the absence of good faith on their part, and a reckless disregard for their duties to the **Company** and its shareholders that the Individual Defendants were aware, or should have been aware, posed a risk

of serious injury to the **Company.**

**143.** The conduct of the Individual Defendants, who were also officers and/or directors of the **Company,** has been ratified by the remaining Director Defendants who collectively comprised all of the **INTELLICELL** Board during the Relevant Period.

**144.** The Individual Defendants breached their duties of loyalty and good faith by allowing defendants to cause, or by themselves causing, to misrepresent its financial results and prospects, as detailed herein, and by failing to prevent employees and/or officers of t h e **Company** from taking such illegal actions.

**145.** In addition, the **Company** is now the subject of multiple actions-litigation alleging violation of federal securities laws, violation of US Codes and Statutes which necessitates the **Company** to incur excess costs arising from the Individual Defendants' wrongful course of conduct.

### Counts

**146.** By virtue of the conduct described m this Complaint Plaintiff-Representative alleges claims:

### Count I.
### Against the Individual Defendants for Breach of Their
### Fiduciary Duties in Connection With Their Management of Intellicell

**147.** Plaintiff-Representative incorporates by reference all preceding and

subsequent paragraphs as if fully set forth herein.

**148.**    By the reasons alleged in the details above, each of the Individual Defendants had a duty to, *inter alia,* exercise good faith to ensure that the **Company** was operated in a diligent, honest and prudent manner and, when placed on notice of improper or imprudent conduct by the **Company** and/or its employees, investors and licensee were required to exercise good faith in taking action to correct the misconduct alleged and prevent its recurrence.

**149.**    By the reasons alleged in details above, the Individual Defendants knew or should have known of the schemes aforesaid, and they failed to remedy this problem, which has caused damages to the **Company** and consequences for the **Company** and its stockholders in the form of multiple claims against **INTELLICELL.**

**150.**    Thus, by the reasons alleged in the details above the Individual Defendants breached their fiduciary duty of good faith.

**151.**    By the reasons alleged in the details above the Individual Defendants have willfully ignored the obvious and pervasive problems related to the control of **INTELLICELL by VICTOR** and **RHODES** allowing for and accounting for the lack of internal control practices and procedures necessary to protect **INTELLICELL** and made no true effort to correct the problems or prevent their recurrence as noticed to them by

**INTELLICELL's employees**, its investors-licensees and the FDA.

152.    Thus, by the reasons alleged in the details above the Individual Defendants abdicated their fiduciary duty of good faith.

153.    By the reason alleged in the details above, there exists a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the **Company** has suffered significant damages, as alleged herein.

## Count II.
### Against the Individual Defendants For Breach of fiduciary Duty in Connection With Disseminating False Information

154.    Plaintiff-Representative incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

155.    By the reasons alleged in the details above, each of the Individual Defendants had a duty to ensure that **INTELLICELL** disseminated accurate, truthful and complete information to the SEC, the Market, investors, licensees, the USPTO and the FDA.

156.    By the reasons alleged in the details above, each of the Individual Defendants violated the fiduciary duties of care, loyalty, and good faith by causing or allowing the **Company** to disseminate to the market and elsewhere materially misleading and inaccurate information through public statements, including, but not limited to, press releases and SEC filings, filing with USPTO, filings with the FDA and in providing documents-subscription agreement to investors-licensees not

containing accurate information or otherwise omitting information necessary to make the information contained therein truthful as described herein.

**157.**   By the reasons alleged in  the details above, each of t h e  Individual Defendants failed to correct the  **Company's** reported statements  to the SEC, the USPTO and  FDA as  well as  correct any  and all  omissions it became  aware of.

**158.**   By reasons alleged in  the details above, each  of  the Individual Defendants  violated the fiduciary duties of care, loyalty, and good faith by causing or allowing the **Company** where the  actions  aforesaid  could  not  have  been  a good  faith  exercise  of  prudent  business  judgment  to  protect  and  promote  the **Company's** corporate interests.

**159.**   By the reasons alleged in the  details above, there  exists  a direct and proximate  result  of  the  Individual  Defendants'  foregoing  breaches  of  fiduciary duties, the **Company** has  suffered  significant  damages,  as  alleged herein.

### Count III.
### Against the individual defendants for breach of fiduciary duty
### for failing to design and Implement Adequate internal controls

**160.**   Plaintiff-Representative  incorporates  by  reference  all  preceding  and subsequent paragraphs as if fully set forth herein.

**161.**   By the reasons alleged in the  details above, each of the Individual Defendants  had  a  duty  to **INTELLICELL** and  its  shareholders  to  design  and implement adequate internal controls, including accounting controls; further, each

of the Individual Defendants were required to ensure the **Company's** assets were protected against waste and looting.

**162.** By the reasons alleged in the details above, each of the Individual Defendants' conduct, as alleged herein constituted a waste of the corporate assets **of INTELLICELL.**

**163.** By the reasons alleged in the details above, each of the Individual Defendants are liable on account of the wrongful acts, practices, and related misconduct alleged in whole or in part, from the knowing, reckless, disloyal and/or bad faith acts or omissions of the Individual Defendants, and the **Company** is entitled to contribution and indemnification from each defendant in connection with all such claims that have been, are, or may in the *future* be asserted against **INTELICELL** by virtue of the Individual Defendants' misconduct.

**164.** By the reasons alleged in the details above, there exists a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the **Company** has suffered significant damages, as alleged herein.

## Count IV.
## Request for Injunctive Relief

**165.** Plaintiff-Representative incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

**166.** Plaintiff-Representative request injunctive relief to establish a lawful and orderly transition in the control of the **INTELLICELL.**

**167.**     Plaintiff-Representative requests injunctive relief in arresting Defendants' blatant violations of the SEC Rules and Regulations as well as those related to the FDA and other state and federal laws, rules, statutes and pertaining to the governance and reporting duties of the **Company;** and so as to prevent further looting and the continuing self-dealing activities; and from illegally controlling **INTELLICELL;** and so as to recover the property belonging to the **INTELLICELL** from the Enterprise Entities controlled by **VICTOR** and **RHODES** which if granted will prevent the immediate and irreparable harm to the **INTELLICELL** and its shareholders, investors, licensees, creditors and as to maintain public confidence in the market place for the trade of SVFC securities.

**168.**     Absent Court intervention, the **Company** will suffer immediate and irreparable harm in the loss of shareholder and public confidence and the further depletion of its assets.

### Count V.
### Imposition of Constructive Trust/Accounting
### Victor, Rhodes and The Enterprise Entities

**169.**     Plaintiff-Representative incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

**170.**     In furtherance of the scheme to defraud **INTELLICELL** Defendants, **VICTOR and RHODES** each individually, are currently in possession or will in the future come into possession, of funds or other benefits- assets, which are rightfully the property of the **Company.**

**171.**     The possession of these funds benefits-assets has occurred by the over reaching agreements entered into between the **Company** and the Enterprise Entities.

**172.**     These Defendants have no legal right to use, hold and/or enjoy any such assets-benefits or funds in equity and good conscience, as such, any assets or funds which come into the possession of these Defendants only do so as a direct consequence of their scheme and artifice to defraud the **INTELLICELL** and its shareholders.

**173.**     **The Company** will suffer irreparable harm and damage to its business if Defendants **VICTOR** and **RHODES** are permitted to retain and use such funds, assets or benefits.

**174.**     Therefore, this Court should impose a constructive trust upon any such funds or other benefits-assets, where said trust should remain in effect until the final resolution of this matter.

**175.**     That by reason of the foregoing, the **Company** is entitled an accounting and recovery of funds profits or other asset-benefits.

## Count VI.
## Appointment of Referee Injunctive Relief

**176.**     Plaintiff-Representative incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

**177.** That by reason of the foregoing, Plaintiff-Representative is entitled to the appointment of a Referee; to any profits made directly or indirectly and arising from the conduct complained of herein and permanent injunctive relief prohibiting the Defendants from claiming ownership of the assets obtained by use of the **Company's** capital and return of those profits to the **Company.**

**PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff-Representative respectfully requests that this Court enter an order-and judgment on the causes of action "I" through "VI":

• Against all of the Individual Defendants and in favor of the **Company** for the amount of damages established at trial on behalf of **INTELLICELL** directing the Individual Defendants to indemnify for all losses, sustained by the **Company** as a result of the Individual Defendants' breaches of fiduciary duties; and

• Ordering the individual Defendants and the Enterprise Entity Defendants to disgorge to the **Company** all of the funds, assets-benefits they received, including the proceeds of any contractual agreement between them and the Enterprise Entities; and

• Granting appropriate equitable relief to remedy Defendants' breaches of fiduciary including upon an accounting with the appointment of a Receiver over the assets, goods and other chattels of **VICTOR** and **RHODES** as and for the ownership interest in **INTELLICELL** and each of the Enterprise Entities; and

• Awarding to Plaintiff-Representative the costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

• Granting such other and further relief as the Court deems just and proper.

Dated:  July 1, 2014 White Plains

_____

DOUGLAS R. DOLLINGER, ESQ. (5922)
Attorney for  Plaintiff Representative
The Law Office of Douglas R.
Dollinger & Associates
50 Main Street-Suite 1000
White Plains, New York 10606
Tele:845.915.6800
Fax:845.915.6801
Email:ddollingeresq@gmail.com