UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DEAN E. MILLER AND JOSEPH M.
SALVANI, as representative shareholders,

                      Plaintiffs,                14-cv-1819 (PKC)

    -against-

                                        MEMORANDUM
                                        AND ORDER

STEVEN VICTOR, MD, et al.,

                      Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Defendants, on behalf of defendant Intellicell Biosciences, Inc. ("Intellicell"), move for an order requiring plaintiff, Dean E. Miller, to give security in the amount of $100,000 for defendants' expenses. (Dkt. 20.) New York Business Corporation Law ("BCL") § 627 "requires the posting of security in shareholders' derivative actions when plaintiff's stockholdings consist of less than five percent of any class of outstanding voting stock or have a fair value of less than $50,000." Haberman v. Tobin, 466 F. Supp. 477, 451 n. 12 (S.D.N.Y. 1979). In opposition to defendants' motion, plaintiff Miller joined shareholder Joseph M. Salvani as an additional plaintiff in this action, claiming that their combined interest in Intellicell meets the requisite threshold of section 627, such that plaintiffs are not required to post a bond. (See Second Amended Complaint ("Am. Compl."), ¶ 15 (Dkt. 31-2); Dollinger Decl., ¶ 2 (Dkt. 33).) For reasons to be explained, the Court concludes that on the present record it has not been shown that plaintiffs Miller and Salvani together owned 5% or $50,000 worth of stock in Intellicell. As such, the Court grants defendants' motion.

DISUCSSION

New York Business Corporation Law § 627 reads in pertinent part:

> In any action specified in section 626 (Shareholders' derivative action brought in the right of the corporation to procure a judgment in its favor), unless the plaintiff or plaintiffs hold five percent or more of any class of the outstanding shares or hold voting trust certificates or a beneficial interest in shares representing five percent or more of any class of such shares, or the shares, voting trust certificates and beneficial interest of such plaintiff or plaintiffs have a fair value in excess of fifty thousand dollars, the corporation in whose right such action is brought shall be entitled at any stage of the proceedings before final judgment to require the plaintiff or plaintiffs to give security for the reasonable expenses, including attorney's fees, which may be incurred by it in connection with such action . . . .

N.Y. Bus. Corp. Law § 627.  BCL § 627 applies to federal diversity actions heard in New York.  See Eisenberg v. Flying Tiger Line, Inc., 451 F.2d 267, 269 (2d Cir. 1971) ("[A] federal court with diversity jurisdiction must apply a state statute providing security for costs if the state court would require the security in similar circumstances." (citing Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949)); see also Haberman, 466 F. Supp. at 451 n. 12 (Section 627 "is applicable to federal diversity actions heard in New York.")  To the extent a complaint states both state and federal claims, courts apply BCL § 627 as to the state causes of action only.  See Weisfeld v. Spartans Indus., Inc., 58 F.R.D. 570, 578 (S.D.N.Y. 1972).  The case at bar is a shareholders' derivative action invoking the Court's diversity jurisdiction (see Am. Compl., ¶ ¶ 1, 11), and as such, BCL § 627 applies to the state law claims asserted.

New York law allows a plaintiff to aggregate his holdings with intervenors to meet the requirements of BCL § 627.  See Sorin v. Shahmoon Indus., Inc., 30 Misc. 2d 408, 438 (Sup. Ct. 1961) ("It is . . . not necessary, in order to avoid posting security, that the initial plaintiffs own stock of the required amount or value at the time of the commencement of the action; it suffices if plaintiffs having sufficient holdings be thereafter duly joined.").

The statute requires that the percentage or monetary threshold be measured at or after the action is commenced.  Specifically, section 627 states that security is required "[i]n any action . . . unless plaintiff or plaintiffs hold" above the threshold.  The use of the present tense of the verb "hold" and the reference to "[i]n any action" is plainly read to mean that the holding is measured at some point during the action.  Courts agree that a plaintiff's or plaintiffs' holdings are measured at or after commencement of the action, although they are not in agreement as to the exact point of measurement.  See Sorin v. Shahmoon Indus., Inc., 30 Misc. 2d at 440 ("The time of the application of a stockholder to intervene in the action fixes the date when the unit market value of his shares is to be ascertained . . . [and] [t]he time of the application for security is the date when the number of shares owned by the stockholder—whether an original suitor or an intervenor—is to be counted."); Dalva v. Bailey, 158 F. Supp. 204, 205-07 (S.D.N.Y. 1957) (holding that market value of an intervenor's shares should be measured as of the return day of the motion to intervene); Weinstein v. Behn, 68 N.Y.S.2d 199, 202 (Sup. Ct. 1947) aff'd, 272 A.D. 1045 (App. Div. 1947) (holding that an intervenor's interest should be measured at the earliest on the date the plaintiff applied for leave to intervene).[1]  As such, to avoid posting security, plaintiffs' combined stockholdings must meet the requisite amount at some point at or after the time of commencement of this action, which was March 17, 2014.

Plaintiffs only claim that Salvani's stockholdings met the threshold level *before* this action was commenced and make no claim that plaintiffs' combined interest exceeded the requisite level at or after the commencement of this suit.[2]  (See Pl. Sur-Reply Memo, p. 2 (Dkt.

---

[1] The cases cited above were decided under New York General Corporation Law § 61-b, which was the predecessor to BCL § 627.  The analysis as to the date a plaintiff's stockholdings are to be measured is the same under both statutes.

[2] The Second Amended Complaint alleges that "Plaintiffs, DEAN E. MILLER and JOSEPH M. SALVANI as collective Representatives shareholders [held] combined shares at all relevant times herein [that] exceeded 5% of the

59); Salvani Decl., ¶ ¶ 4-5.)  Nevertheless, plaintiffs argue that the Court should deny defendants' request for a bond because, prior to the commencement of the action,  Salvani's holdings fell below the required amount as a result of Intellicell's Board "deliberately diluting" the shareholders' ownership interests.  (See Pl. Sur-Reply Memo, p. 2 ("Only because the corporation saw fit to issue new stock . . . did the plaintiff's holdings fall below the amount stipulated in the statue."))  Plaintiffs argue that the purpose of BCL § 627, which is to discourage strike suits, would not be served where the defendants' wrongful actions caused plaintiffs' shareholdings to fall below the statue's threshold.  (See Pl. Sur-Reply Memo.)

The Court disagrees with plaintiffs' argument and concludes that because plaintiffs do not show that they owned 5% or $50,000 worth of stock in Intellicell at any relevant time at or after commencement of this suit, defendants' motion for security should be granted.  While a plaintiff, whose stockholdings were sufficient when the action started, may be excused from posting security where his ownership interest was diluted due to defendants' actions *after* the suit commenced, see Roach v. Franchises Int'l, Inc., 32 A.D.2d 247 (2d Dept. 1969), the rule is not the same for dilution *before* the lawsuit is commenced.  The only support for a contrary view comes from dictum in an unreported state trial court decision, in which the court did not require the posting of a bond because defendants failed to make an application for security.  See Dingle v. Xtenit, Inc., 20 Misc. 3d 1123(A) (Sup. Ct., New York County, 2008) (stating that

---

outstanding shares and/or [held] investments [that] exceeded the sum of $50,000.00."  (Am. Compl., p. 1.)  In the reply declaration of defendant Steven Victor, he states that "[t]he combined interests of Messrs. Miller and Salvani, as of the time of the commencement of this action, was . . . only 5,340 shares, which was less than 0.00027% of Intellicell's outstanding common shares . . . and had a total value of only $31.49 at that time."  (Victor Reply Decl., ¶ 5 (Dkt. 34).)  In response, Salvani declares that he is "uncertain as to whether Dr. Victor's statements are actually true for the reason of multiple defective filings presented to the Securities and Exchange Commission by Defendants as related to IntelliCell."  (Salvani Decl., ¶ 5 (Dkt. 60).)  Further, Salvani states that he "can say that at all times material hereto, meaning during the periods involving the factual matters comprising the claims of wrongdoing set forth in the [Second Amended Complaint] [he] was the owner or holder in trust in excess of 5% of the shares issued by IntelliCell."  (Id.)

plaintiff was not required to post security pursuant to BCL § 627 in part because it was "undisputed that at the time of the wrongs complained of, plaintiff was a 15% shareholder, and that he did not voluntarily reduce his shares, but rather, they were reduced below the statutory 5% by defendants' actions").

A derivative action is brought to vindicate the rights of the corporation against third parties, including officers or directors, where the directors of the corporation have a disqualifying interest that excuses the demand requirement.  Giving the language of section 627 its intended meaning, i.e. that "[i]n any action . . . plaintiffs hold . . . ," does not undermine the utility of derivative actions.  First, the plaintiffs are free to pursue the action; they need only post the security.  Second and equally important, other shareholders whose collective holdings exceed the threshold for the posting of security are available to pursue an action in the name of the corporation.

Even if the Court considered plaintiffs pre-commencement holdings, the plaintiffs have not made an adequate showing that their holdings met the threshold level at the time of the complained of wrongs.  Salvani claims that he "owned nearly ten percent (10%) of the company prior to Dr. Victor diluting [him]."  (Salvani Decl., ¶ 6.)  Salvani attributes his alleged 10% ownership to (1) two million shares of Intellicell's common stock that he alleges he owned at the end of September 2012 and (2) 3,250 preferred convertible shares that "convert into 3,250,000/shares," held in the name of JFS Investments Inc. ("JFS"), an entity of which he claims to be the "sole member."  (Id.)  Salvani fails to attach any supporting documents to demonstrate his ownership of two million shares in 2012, nor does he provide information to compute his percentage ownership or the fair market value of his shares.  Further, on September 5, 2014, this Court ordered plaintiffs to produce within 14 days: "documentation establishing the

extent of Mr. Salvani's current ownership interest, if any, in [JFS]." (Dkt. 57.) No documentation was produced. (<u>See</u> Sanders Reply Decl., ¶ 2 (Dkt. 64).) This Court may properly draw an adverse inference that the documentation would not support plaintiffs' claim. The documentation is relevant to the claim that Salvani owns or controls JFS, plaintiffs failed to produce it with a culpable state of mind, intentional or grossly negligent, because the direction was in a brief Order of the Court, as distinguished from some lengthy document request served by opposing counsel, and no explanation for the failure to produce was tendered. <u>See Residential Funding Corp. v. DeGeorge Fin. Corp.</u>, 306 F.3d 99 (2d Cir. 2002).

Finally, to the extent Salvani once held conversion rights in connection with a $50,000 loan to Intellicell, as alleged in the Second Amended Complaint (<u>see</u> Am. Compl., § J), defendant Victor shows that the debt and associated conversion rights were assigned to a third-party on or about August 7, 2013, prior to the commencement of this action. (Victor Reply Decl., ¶ 6.) Plaintiffs do not dispute defendants' assertions regarding the assignment of Salvani's $50,000 loan. Thus, plaintiffs' allegation regarding debenture agreements should not be considered on this motion.

Plaintiffs were required to show that at some point at or after the commencement of the action their holdings exceed the threshold and they did not. If New York law permitted this Court to consider pre-commencement shareholdings—and it does not, plaintiffs fail to show that their holdings met the threshold level at any time pre-commencement.

The Court concludes that the posting of security is required. Defendants request a bond in the amount of $100,000 "[b]ecause of the extraordinary breadth of plaintiff's claims in this action." (Def. Memo in Support of Motion for Security, p. 9 (Dkt. 23).) Defendants explain that the cost of defending this action is expected to be "extremely high," due to the " 'kitchen-

sink' pleading," which includes a complaint of 181 paragraphs, covers a period of over four years in length, and presents a "long list of persons, located all over the world, from whom discovery, including depositions will need to be obtained." (Victor Decl., ¶ 12 (Dkt. 21); Am. Compl., ¶ 5.) Further, while Intellicell is named in the action as a "nominal-defendant," defendants show that the company has the duty to indemnify directors and officers and thus stands exposed. (See Victor Decl., ¶ 11 ("[S]ince the individual defendants in this action are current or former directors and officers of Intellicell [and the company's bylaws provide for the indemnification of directors and officers], it is clear that Intellicell will need to advance, and may ultimately be required to bear, the cost of defending this action.").) Courts have fixed the security required under BCL § 627 at $100,000 in other cases. See Haberman, 466 F. Supp. at 451 ($100,000 bond required "[b]ecause of the magnitude of [the] case"). The Court concludes that $100,000 is an appropriate amount to cover the "reasonable expenses," including attorney's fees, which may be incurred in connection with this action.

CONCLUSION

       For the reasons outlined above, defendants' motion for security pursuant to BCL § 627 (Dkt. 20) is GRANTED. Plaintiffs are ordered to post a bond in the amount of $100,000 within fourteen (14) days of this Order.

       SO ORDERED.

_P. Kevin Castel_
United States District Judge

Dated: New York, New York
       March 2, 2015